## PEOPLES BANK *v.* ARMOUR FERTILIZER WORKS.

GILBERT, J. The exception is to a judgment overruling a motion for a new trial, which was based solely upon the general grounds. The evidence was sufficient to authorize the verdict.

*Judgment affirmed. All the Justices concur.*

No. 4307. JULY 18, 1924.

Claim. Before Judge Roop. Carroll superior court. February 13, 1924.

On November 30th, 1920, G. C. Burson made to Peoples Bank a deed to secure a debt, conveying three parcels of realty, the first of which was described as "A part of lot No. 91, . . beginning at the center of the second bridge going west on the Carrollton and Bowdon road and west along said road to J. H. Burson's line, thence along said J. H. Burson's line north to a corner north of old branch run, thence southeast along a ditch to where a ditch intersects a branch ditch, thence along said ditch to the starting point, containing fifty acres, more or less." On the back of this deed the following notation appears: "Whereas G. C. Burson, the maker of the within deed, having submitted other securities acceptable to the vendee, the within deed is canceled and the clerk of the superior court of Carroll County is authorized to cancel same of record. This April 16th, 1921. The Peoples Bank By G. C. Cook, Cashier." With the exception of the interlineation the notation is typewritten. This interlineation was made with pen and ink, and was stricken with pen and ink. This deed was canceled of record April 19, 1921. On April 16, 1921, Burson made to Peoples Bank a deed to secure a debt, conveying two parcels of realty, describing one of them as "90 acres, more or less, of land lot No. 91, . . beginning at the second bridge going west on the Carrollton Bowdon and Simonton Mill road, running north along the branch to an intersecting ditch, thence northwesterly along said ditch and intersecting line of J. H. Burson, thence along said line to original land line, thence east along original line to a corner established by S. D. Brown, surveyor, April, 1920, thence south to original line between lots No. 91 and No. 70, thence west along said line to branch, thence along said branch to public road, thence west along said road to starting point." This deed also contained the following: "This deed is subject to a deed this day made J. D. Fuller by G. C. Burson to secure a loan

of $2,000.00, and is made for the purpose of securing an indebt-
edness of $—, and as to the second parcel of land it is second
to deed from G. C. Burson to J. W. Stone. Subsequently a fi. fa.
was issued from the city court of Carrollton in favor of Armour
Fertilizer Works against G. C. Burson, and was levied upon the
tract of land first described above. Peoples Bank filed a claim
to the land, trial of which resulted in a finding that the land was
subject. A motion for new trial, on the general grounds only,
filed by Peoples Bank, was overruled, and error was assigned upon
that judgment.

The testimony introduced on behalf of the claimant was to the
effect that it was not the intention of Burson or the bank that
the lien of the deed of November 30, 1920, as to the tract of fifty
acres, more or less, in lot 91 should be released; that it was the
intention that the lien as to the two other tracts conveyed by that
deed should be released in order that Burson might be enabled
to acquire the tract of ninety acres in lot 91 described in the deed
of April 16, 1921; that the bank was induced to make this ar-
rangement because of the fact that the tract of 90 acres to be ac-
quired adjoined the tract of 50 acres upon which it already held
lien, and because of this fact the security afforded would be better
than the two tracts released; that when the deed was delivered
to the clerk of the superior court for record of the cancellation,
the interlineation therein "as to second and third parcels of land
described therein" had not been stricken. The testimony offered
by plaintiff in fi. fa. was to the effect that the parties intended,
in making the cancellation, to include the tract of fifty acres upon
which the levy was made. The cashier of Peoples Bank, claim-
ant, testified, in part: "In reply to the question if I agreed with
Mr. Burson to release this land in order that he might get a loan
from J. D. Fuller for two thousand dollars, I answer I agreed to
release the ninety acres, and it was this ninety acres. I did not
release the fifty acres. . . I agreed to release the ninety acres
for him, but did not release the fifty acres. I did not agree to
release the fifty acres. That was not the understanding. . .
Mr. Holderness made this interlineation up there; he wrote it.
I carried that paper to the clerk's office for record, and when I
carried it there that interlineation was there and it was not stricken.
That wasn't stricken out when I sent it to the clerk's office or car-

ried it to the clerk's office." Another witness for the claimant
testified that "when Mr. Cook [the cashier of the bank] came
down [to the office of the attorney for the bank], he said there
was one or two tracts to be released, and Mr. Holderness said to
save a record of a new deed he would just interline that, and took
up a pen and interlined it." The attorney who represented the
bank in the transaction testified: "I thought the cancellation was
to go to cover the tract to Mr. Fuller, and I had drawn previously
to this cancellation to the whole, and I found only two tracts were
involved, and I then interlined it and stated to Mr. Cook it was
absolutely unnecessary to take a new deed when he was only to
release two tracts, and draft a deed to the two tracts that he had
previously deeded to Mr. Fuller and had Mr. Burson to execute
the deed." Burson, defendant in fi. fa testified for claimant: "I
was present in Mr. Holderness's office when the interlineation was
made. My understanding was it was to be 90 acres released;
that was my understanding, 90 acres to be released in order for
me to get a loan from Mr. Fuller. My understanding was Mr.
Cook was to release to Fuller 90 acres to get a loan." A witness
for plaintiff in fi. fa. testified: "This is the deed to the place.
The bank was to cancel their deed and take a second mortgage
on this fifty-acre tract. . . They were to take a second mort-
gage on the 90 acres. I don't remember about the 50-acre tract,
but I know the property they held deed to they were to release
their claim and take a second mortgage, in order to get money
from Mr. Fuller. That 50 acres was to be included in Fuller's
deed, and they were to cancel that." The clerk of the superior
court testified: "I wrote that cancellation as it came to me. In
reply to the question, 'at the time you wrote it was that interlined
in there with blue ink and this struck out with black?' I answer
I am sure it was there, because if it hadn't been stricken I would
have written it in there. I have no independent recollection of it
being in there. I just wrote it just exactly as it came to me.
There is nothing to make me remember it. . . In reply to the
question if I would swear absolutely when Mr. Cook or the officers
of the bank turned it over to me that line was in there, I answer,
of course, I don't have any independent recollection of it, but I
don't think I would have overlooked anything like that if it had
been interlined and hadn't been scratched out."

*S. Holderness,* for plaintiff in error.
*Boykin & Boykin,* contra.